IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

TAMMY A. SKIDMORE,

           Plaintiff,

v.                      CIVIL ACTION NO. 2:18-cv-01308

NORFOLK SOUTHERN RAILWAY COMPANY,

           Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff Tammy Skidmore's ("Plaintiff") Motion to Remand. (ECF. No. 6.) For the reasons discussed herein, the Court **DENIES** the motion.

*I.    BACKGROUND*

The allegations in the Amended Complaint involve a parcel of real property located at 176 Page Street, Kincaid, Fayette County, West Virginia. Plaintiff resides in a home located on the property. (ECF No. 1-1 at 5, ¶¶ 1, 6.) The eastern boundary of the property boarders Loop Creek, and Plaintiff's home faces a railroad track situated on the opposite side of the creek. (*Id.* ¶¶ 7, 9.) Defendant Norfolk Southern Railway Company ("NSRC") owns railroad lines that run adjacent to the creek, opposite of the property, (*id.* ¶ 9), and a right-of-way on a portion of Plaintiff's property, abutting Loop Creek, for rail operations.[1]

---

[1] Pursuant to a 1903 deed, Plaintiff's predecessors in title conveyed NSRC's predecessor, Deepwater Railway Company, a right-of-way on the property. (ECF No. 1-1 at 87.) The right-of-way extends "75 feet at a right angle from the center of the [railroad] tracks for a linear distance in excess of 500 [sic] feet." (*Id.*; ECF No. 7 at 2.) NSRC represents that the lines on this right-of-way are currently being leased to the Kanawha River Railroad. (*Id.* at 7, n.10.)

In or around 2001, NSRC installed a culvert under its track structure. The culvert drains water from its property into Loop Creek, a short distance upstream from Plaintiff's residence. (*Id.* at 5–6, ¶¶ 11–13.) Plaintiff alleges that, from 2015 to the present, approximately three to five feet of the property abutting Loop Creek has eroded as a result of the culvert, and the "constant and continuous soil erosion" is threatening the foundation of her home. (*Id.* at 6–7 ¶¶ 20–21.)

Based on these allegations, Plaintiff originally filed this action in the Circuit Court of Fayette County, West Virginia, asserting negligence, private nuisance, and trespass claims against NSRC. (*Id.* at 23–25 ¶¶ 26–43.) After answering the initial complaint, NSRC conducted a survey of the property. The survey established that the alleged eroded creek bank and a small portion of Plaintiff's home are located on NSRC's right-of-way. (*Id.* at 89–90.) On March 16, 2018, NSRC filed an amended answer to raise a legal standing defense to Plaintiff's claims. Specifically, NSRC asserts that Plaintiff lacks standing to pursue claims and damages regarding property she does not own. (*Id.* at 76, 81; ECF No. 1-1 at 76 (amended answer).)

On August 23, 2018, Plaintiff filed an amended complaint, adding claims to quiet title of the subject portion of the right-of-way by adverse possession and prescriptive easement.[2] (*Id.* at 7–12 ¶¶ 24–59.) On September 20, 2018, NSRC filed a notice of removal invoking this Court's jurisdiction on the basis that Plaintiff's state law claims are preempted by the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. 10101, *et seq*. (ECF No. 1.) On October 19, 2018, Plaintiff moved to remand, arguing that NSRC's notice of removal was untimely and that the ICCTA does not apply to the present case. (ECF No. 6.) NSRC filed a response in

---

[2] The Amended Complaint also alleges negligence, private nuisance, trespass, strict liability claims and seeks injunctive relief requiring modification of the culvert and stream bed at the bottom of Loop Creek. (*Id.* at 7–13.)

opposition on November 2, 2018, (ECF No. 7), and on November 9, 2018, Plaintiff filed a reply in support of remanding the case, (ECF No. 10).

## II. LEGAL STANDARD

Congress has provided a right of removal from state to federal court for any case that could have originally been brought in federal court. *See* 28 U.S.C. § 1441(a). Under 28 U.S.C. § 1331, federal district courts have original jurisdiction "of all civil actions arising under the constitution, laws, or treaties of the United States." Additionally, 28 U.S.C. § 1367(a) confers federal district courts with supplemental jurisdiction over all "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."

In evaluating a party's claim to federal jurisdiction, a court should look to the circumstances as they existed at the time the notice of removal was filed. *See Dennison v. Carolina Payday Loans, Inc.*, 549 F.3d 941, 943 (4th Cir. 2008) ("[F]ederal jurisdiction . . . is fixed at the time the . . . notice of removal is filed.") (citation omitted). The party asserting federal jurisdiction bears the burden of proof. *Landmark Corp. v. Apogee Coal Co.*, 945 F. Supp. 932, 935 (S.D. W. Va. 1996). "When removal is challenged, the defendant must establish jurisdiction by a preponderance of the evidence." *S. v. Marion Cty. Coal Co.*, No. 1:15-cv-171, 2015 WL 6964651, at *2 (N.D. W. Va. Nov. 10, 2015) (citing *Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 297–98 (4th Cir. 2008)). Because removal of civil cases from state to federal court infringes state sovereignty, federal courts strictly construe the removal statute and resolve all doubts in favor of remanding cases to state court. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941); *see also Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994)

("Because removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction.") (citation omitted).

### III. DISCUSSION

The well-pleaded-complaint rule has long governed whether a case "arises under" federal law. *See, e.g., Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127–28 (1974). This rule "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar v. Williams*, 483 U.S. 386, 392 (1987); *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109 (1936)). Consistent with this rule, a case generally cannot be removed to federal court based on a federal defense alone, including the defense of federal preemption. *Caterpillar*, 483 U.S. at 392–93.

"One corollary of the well-pleaded complaint rule . . . is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Taylor*, 481 U.S. at 63–64. Complete preemption occurs whenever state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Chi. & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 317 (1981) (quoting Perez v. Campbell, 402 U.S. 637, 649 (1971)). In deciding whether a federal law preempts a state claim, the court must "ascertain Congress' intent in enacting the federal statute at issue." *Metro. Life Ins. Co. v. Mass.*, 471 U.S. 724, 738 (1985).

Removal jurisdiction in this case is premised on the ICCTA preemption of Plaintiff's state law claims. Prior to the enactment of the ICCTA, the primary statement of Congressional railroad policy was the Interstate Commerce Act of 1887 ("ICA"). The ICA was designed to regulate the

4

railroad industry and has been labeled "one of the most comprehensive regulatory plans that Congress has ever undertaken." *United States v. Baltimore & O. R. Co.*, 333 U.S. 169, 175 (1948). The ICA created the Interstate Commerce Commission ("ICC") and charged it with broad authority to implement provisions of the ICA and regulate many facets of the railroad industry.

In 1995, Congress enacted the ICCTA, terminating the ICC altogether and transferring many of its regulatory functions to the Surface Transportation Board ("STB"). *See* ICC Termination Act of 1995, Pub.L. 104–88, 109 Stat. 803 (Dec. 29, 1995); 49 U.S.C. § 10501; *PCS Phosphate Co., Inc. v. Norfolk S. Corp.*, 559 F.3d 212, 218 (4th Cir. 2009). Specifically, the ICCTA grants the STB "exclusive" jurisdiction over "(1) transportation by rail carriers . . . and (2) the construction, acquisition, operation, abandonment, or discontinuance of . . . tracks, or facilities." 49 U.S.C. § 10501(b). "Transportation" by rail carriers is an expansive term and includes, in relevant part, "(A) a . . . property, facility, instrumentality, . . . related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use; and (B) services related to that movement . . . [.]" *Id.* at § 10102(9). The statute also broadly defines "railroad" to include "a switch, spur, track, terminal, terminal facility, and a freight depot, yard, and ground, used or necessary for transportation." *Id.* at § 10102(6). *See also Wis. Cent. Ltd. v. City of Marshfield*, 160 F.Supp.2d 1009, 1015 (W.D. Wis. 2000) (noting Congress' intent in enacting the ICCTA was to substantially deregulate the railroad industry to ensure its economic viability (citing 49 U.S.C. § 10101 and *CSX Transp., Inc. v. Ga. Pub. Serv. Comm'n*, 944 F. Supp. 1573, 1583 (N.D. Ga. 1996))).

The Fourth Circuit has recognized that the ICCTA's preemption provision expressly displaces state "regulation" of rail transportation. *See, e.g., Norfolk S. Ry Co. v. City Of*

*Alexandria*, 608 F.3d 150, 157 (4th Cir. 2010). *See also PCI Transp. Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535 (5th Cir. 2005) (affirming removal based on ICCTA preemption); *Union Pac. R.R. v. Chi. Transit Auth.*, 647 F.3d 675, 678 (7th Cir. 2011) (reasoning that "Congress's intent in the [ICCTA] to preempt state and local regulation of railroad transportation has been recognized as broad and sweeping.").

NSRC argues that Plaintiff's claims for adverse and prescriptive taking of railroad property are preempted under the ICCTA and were properly removable on their face under the complete preemption doctrine. Plaintiff makes three arguments against removal jurisdiction in this case. First, Plaintiff argues that NSRC's removal was untimely. Second, Plaintiff contends that the ICCTA does not apply because her title vested in the disputed property prior to its enactment. Finally, Plaintiff maintains that, even if the ICCTA applies, her claims to quiet title are not subject to the STB's regulatory mandate because this portion of the right-of-way is not used for rail transportation within the meaning of the statute. The Court disagrees and finds that Plaintiff's claims were timely and properly removed to federal court.

*A. NSRC's Removal was Timely*

Plaintiff's first point of contention is that NSRC's removal was untimely. Generally, a defendant must file a notice of removal within 30 days of service or receipt of the initial pleading. *See* 28 U.S.C. § 1446(b)(1). If the claims set forth in the initial pleading are not removable, a defendant may file a notice of removal within 30 days of receiving "an amended pleading, motion, order or other paper from which it may be ascertained that the case is one which is or has become removable." *Id.* at § 1446(b)(3).

6

Plaintiff argues that it was clear on the face of the initial complaint that she was asserting ownership over the portion of property at issue. She asserts that the filing thereof, in March of 2017, consequently triggered the 30-day removal period. (ECF No. 6 at 4–5.) Alternatively, Plaintiff argues that the 30-day removal period began on March 1, 2018, once NSRC became aware of the property dispute and filed a motion to amend its answer to raise a standing defense to Plaintiff's claims. (*Id.* at 5.)

Plaintiff's arguments are misplaced as neither the initial claims nor prospective defenses thereto implicate federal law. The initial complaint expressly states that "Plaintiff is . . . the owner of [the property]", (ECF No. 1-1 at 21, ¶ 8), and further alleges events and resulting damages specifically to "Plaintiff's property." (*See e.g., id.* at 23, ¶ 21.) While these allegations certainly imply that Plaintiff was asserting ownership to the property at issue, her claims did not attempt to "regulate" aspects of rail "transportation" within the purview of the ICCTA. *See Norfolk S. Ry. Co.*, 608 F.3d at 157 (recognizing "that Congress has narrowly tailored the ICCTA preemption provision to displace only 'regulation,' i.e., those state laws that may reasonably be said to have the effect of 'managing' or 'governing' rail transportation.") (internal citations and quotations omitted); *see also Wis. Central, Ltd.*, 160 F.Supp.2d at 1013 (defining "regulation" as the "act or process of controlling by rule or restriction" (citing Black's Law Dictionary 1289 (7th ed. 1999))).

The complaint simply advanced state claims based on alleged tortious acts. *See Emerson v. Kan. City S. Ry. Co.*, 503 F.3d 1126, 1130 (10th Cir. 2007) (holding that improper trash disposal and a failure to maintain a drainage ditch are not instrumentalities or services related to "transportation" but "[r]ather, they are possibly tortious acts committed by a landowner who happens to be a railroad company."). The effects of the state remedies sought in relation to these

7

tort claims would not have had an "unreasonable burden" or interference with rail transportation to invoke this Court's jurisdiction under the ICCTA. *See id.; see also Rushing v. Kan. City S. Ry. Co.*, 194 F.Supp.2d 493, 501 (S.D. Miss. 2001) (holding that negligence and nuisance claim related to damage from stormwater runoff from railroad property is not "the type of economic regulation Congress was attempting to prescribe when it enacted the ICCTA" and is not preempted); *Iowa, Chi. & E. R.R. Corp. v. Washington Cty., Iowa*, 384 F.3d 557, 561 (8th Cir. 2004) (holding that state law requiring railroad bridge replacement was not preempted).

Similarly, potential defenses to Plaintiff's state tort claims could not give rise to complete preemption. *See Fayard v. Ne. Vehicle Servs., LLC*, 533 F.3d 42, 47–49 (1st Cir. 2008) (holding that "preemption may well be a defense to the [plaintiffs'] nuisance claims, but the conditions have not been met to authorize removal through the extreme and unusual outcome of complete preemption"). Instead, Plaintiff's alleged ownership over the disputed property merely raised an issue of legal standing as NSRC raised in its amended answer to the initial complaint.[3] *See Findley v. State Farm Mut. Auto. Ins. Co.*, 576 S.E.2d 807, 821 (W. Va. 2002) ("Generally, standing is defined as '[a] party's right to make a legal claim or seek judicial enforcement of a duty or right.'" (citing Black's Law Dictionary 1413 (7th ed. 1999)); *State ex rel. Leung v. Sanders*, 584 S.E.2d 203, 212 (W. Va. 2003) ("One specific aspect of standing is that one generally lacks standing to assert the rights of another."); *W. Va. Div. of Highways v. Mason*, No. 17–0430, 2018 WL 2192987, at *3 (W. Va. May 14, 2018) (memorandum decision) (holding respondent lacked standing to enjoin petitioner from removing hedges and trees because she did not have an ownership interest in the property in question). Whether Plaintiff has an ownership interest in the

---

[3] The Court makes no judgment on the substantive merits of any state law claim or defense stemming from the events and circumstances alleged in the initial complaint.

property for purposes of determining legal standing is a question of state law that does not convey "original jurisdiction" to this Court. *See* 28 U.S.C. § 1441(a) (providing for removal under § 1441 only where the federal courts would have "original jurisdiction.").

The Court finds that Plaintiff's claims did not become removable until she filed her Amended Complaint on August 23, 2018. It was then when Plaintiff asserted state law claims, designed to regulate and strip NSRC of its ownership and right to use the right-of-way—property within the national railway system. As discussed below, claims to quiet title through adverse possession or prescriptive easement affect rail transportation and are completely preempted under the ICCTA. *See, e.g., 14500 Ltd. v. CSX Transp., Inc.*, 2013 WL 1088409 (N.D. Ohio 2013) (where landowner erected and maintained fence on rail property and sought to quiet title through adverse possession and prescriptive easement, the court held that removal was proper because "attempts to take railroad property are preempted by the ICCTA."). Therefore, the Court finds that NSRC timely removed the case on September 21, 2018, 29 days after the 30-day period for removal began.

  B. *The ICCTA Applies*

Plaintiff next argues that there is no basis for federal jurisdiction because she satisfied the statutory period to acquire title by adverse possession prior to the enactment of the ICCTA in 1995. (ECF No. 6 at 5–7 (citing Syl. Pt. 3, *Wallace v. Pack*, 749 S.E.2d 599 (W. Va. 2013) (outlining elements of adverse possession); Syl. Pt. 4, *Bennett v. Pierce*, 40 S.E. 395 (W. Va. 1901) (providing that once the statutory period to recover land has lapsed, "the statute vests good title in the occupant against his adversary.").) Plaintiff points to deeds dated from 1896 to 2012 to establish that she and her predecessors in title have claimed ownership over the property at issue

under color of title since 1904. (ECF No. 6 at 6; *see also* ECF Nos. 6-1, 6-2, 6-3, 6-4, 6-5, 6-6, 6-7, 6-8 (deeds conveying title to Plaintiff's property).) Further, Plaintiff offers affidavits attesting that the subject portion of the property has remained unimproved since at least 1945, except for Plaintiff's home which encroaches onto the right-of-way. (ECF No. 6 at 6; *see also* ECF Nos. 6-9, 6-10 (affidavits).) The affidavits also attest that the property is not currently being used, nor has it ever been used, for railroad purposes. (*Id.*)

Plaintiff relies on *Gipson/Hudson Props., LLC v. Norfolk S. Corp.* for the proposition that the ICCTA is inapplicable to her claim to quiet title because the track at issue was abandoned prior to enactment of the ICCTA. 2009 WL 10668532 (N.D. Ga. 2009). In *Gipson*, a rail carrier was granted permission from the ICC to discontinue maintenance and operations of its interstate track. *Id.* at *1. The abandoned track was divided into parcels of land, and a right-of-way containing the railroad's spur track was sold to a separate rail carrier.[4] *Id.* Thereafter, in an action to quiet title, it was argued that the right-of-way was abandoned in the late 1980s after the spur track was removed, grass was planted, and asphalt driveways and parking areas were installed on the property. *Id.* at *3–4. The court noted that "there was nothing on the Property in 1996 over which the STB could have assumed jurisdiction" because the track had already been removed from the property. *Id.* at *3. Therefore, the court held that the plaintiff's claim was not preempted because the spur track "had ceased to exist years before the STB ever acquired jurisdiction over such matters." *Id.* at *4.

---

[4] At the time, the ICA specifically excluded intrastate spur track from the jurisdiction of the ICC, thus leaving states with regulatory authority. *Gipson/Hudson Props., LLC v. Norfolk S. Corp.*, 2009 WL 10668532, at *1, n.3 (N.D. Ga. 2009).

*Gipson* is of little utility. Unlike in *Gibson* where "the STB did not acquire jurisdiction over the spur track that previously traversed the Property because the spur track no longer existed", *id.* at *4, there is no dispute that the track at issue here still exists and continues to operate within the national railroad system. (ECF No. 1-1 at 21, ¶ 11; ECF No. 7 at 7.) Recognizing this problem, NSRC argues that the property could not have been lawfully abandoned prior to the passage of the ICCTA without the ICC's authorization. NSRC contends that it has never petitioned the ICC nor the STB to abandon the subject property and such has never been approved. (ECF No. 7 at 13–14.) Plaintiff does not dispute that the ICC never authorized abandonment of the property at issue. Rather, Plaintiff implies that the reach of the ICC's mandate was not as broad as the STB under the ICCTA and did not extend to the abandonment of railroad property.

Plaintiff does not cite authority to support her narrow interpretation of the ICC's regulatory authority under the ICA. Contrary to Plaintiff's view, the Supreme Court has stated that the ICA "endow[ed] the Commission with broad authority over abandonments, or permanent cessations of service." *Kalo Brick & Tile Co.*, 450 U.S. at 319, 323. The *Kalo Brick* Court confirmed that, pursuant to 49 U.S.C. § 10903(a) (1976), a rail carrier subject to the jurisdiction of the ICC could abandon any part of its railroad lines, or discontinue operations, "only if the Commission [found] that the present or future public convenience and necessity require[d] or permit[ted] the abandonment or discontinuance." *Id.* at 323. Indeed, § 10904 specifically set forth the procedure for obtaining a certificate of abandonment or discontinuance from the ICC. *See* 49 U.S.C. § 10904 (1976). The ICC was generally deemed to have terminated its jurisdiction over the line once it issued a certificate of abandonment. *See Preseault v. ICC*, 494 U.S. 1, 5, n.3 (1990); *Hayfield N. R. Co. v. Chi. & N. W. Transp. Co.*, 467 U.S. 622, 632–34 (1984). The ICC echoed

11

Supreme Court precedent and also stated that whether a line has been "abandoned is a question of the carrier's intent." *Iowa Power, Inc.—Constr. Exemption—Council Bluffs, IA*, 8 I.C.C.2d 858, 863 (1990).

The Fourth Circuit has not directly spoken on the interplay between state law adverse possession claims and the regulatory authority of the ICC prior to the enactment of the ICCTA. However, in *B & S Holdings, LLC v. BNSF Ry. Co.*, the Eastern District of Washington aptly ruled that the ICCTA completely preempted a former landowner's state law adverse possession claim against a railroad "because not only would [the action] interfere with railroad operations, but would divest the railroad of the very property with which it conduct[ed] its operations." 889 F.Supp.2d 1252, 1258 (E.D. Wash. 2012). In *B & S Holdings*, a building and parking area had encroached on the railroad's right-of-way since before 1979. (ECF No. 7-2 at 3, 4 (declaration).) Nonetheless, the court reasoned that whether to grant the former landowner clear title to the property necessarily involved the regulation of rail transportation and was a decision that rested exclusively with the STB.

The Colorado District Court addressed a similar issue in *Phillips Co. v. S. Pac. Rail Corp.*, where a plaintiff sought ownership over a portion of railroad property allegedly abandoned before 1988. 902 F.Supp. 1310, 1311 (D. Co. 1995). The *Phillips* court referred the question of abandonment to the ICC, which declared a bright line rule that an abandonment "could occur only after ICC approval." *Id.* The ICC found that because it "never exercised its authority at 49 U.S.C. [§] 10903 to permit an abandonment", an abandonment could not have occurred. *Id.* The court deferred to the ICC's decision and dismissed the plaintiff's claim as it was undisputed that the ICC had not authorized an abandonment. *Id.* at 1312–13.

Applying existing ICC and court precedent, the Court finds that the breadth of the ICC's regulatory authority under the ICA included the abandonment of railroad property. The right-of-way here is part of the interstate rail network and was once regulated by the ICC through the ICA and now by the STB through the ICCTA. *See* 49 U.S.C. § 10501. Plaintiff has not established, nor is it alleged, that abandonment proceedings were held before the ICC or that the ICC permitted NSRC to abandon the subject right-of-way. Moreover, there is no evidence that NSRC ever intended to abandon this property. Considering the evidence, the Court cannot find that the property was lawfully abandoned prior to the enactment of the ICCTA. Accordingly, the ICCTA applies to Plaintiff's adverse possession claim, *see Ouachita R.R., Inc. v. Circuit Court of Union Cnty*, 206 S.W.3d 811, 817 (Ark. 2005) ("[J]ust as the ICC had exclusive jurisdiction over a railroad's abandonment of its lines, so does the STB since the passage of the ICC Termination Act of 1995."), and whether Plaintiff can establish the requisite elements for adverse possession is only relevant should the STB determine otherwise.

  *C. The ICCTA Prevents the Taking of Railroad Property*

As a final challenge to removal, Plaintiff argues that the ICCTA cannot prevent a taking because the disputed portion of the right-of-way is not utilized for "transportation by rail carriers" or to facilitate "the movement of passengers or property." (ECF No. 6 at 10.) In response, NSRC argues that the right-of-way contains an elevated track structure, slope, and culvert, which serve to adequately drain surface water from the active track and ensure proper transportation of property, namely coal. NSRC claims that a taking of any portion of this property, which unequivocally relates to rail transportation, is prevented under the ICCTA. (ECF No. 7 at 16.) The Court finds NSRC's argument persuasive.

13

As Plaintiff alleges in the Amended Complaint, the culvert is installed "in the Federal Emergency Management Administration 100-year Floodplain", (ECF No. 1-1 at 6, ¶ 14), and "drain[s] surface water from NSRC's property into Loop Creek", (*id.* ¶ 13). Because "Loop Creek lacks sufficient capacity", water draining from NSRC's property naturally discharges against the subject portion of the right-of-way abutting the creek. (*Id.* ¶¶ 16, 19.) There is no dispute that the culvert was installed to protect the track structure from flooding and for adequate drainage—central components to ensuring the unimpeded flow of interstate commerce through transportation of property. Without adequate drainage, rail carriers could not operate. The Court finds this use is unquestionably related to rail transportation, and an attempt to take *any* portion of the railroad property is preempted under the ICCTA.

Moreover, despite the absence of tracks or equipment on the portion of the right-of-way over which Plaintiff seeks to take exclusive ownership and control, the Court cannot ignore the fact that the remaining portion of the 75-foot right-of-way does contain an operation rail line and property related to transportation. As stated previously, there is no evidence that the ICC or the STB authorized NSRC to abandon the subject portion of the right-of-way. Nor does this portion of the railroad right-of-way fall outside the scope of the ICCTA simply because a narrow body of water separates it from active rail property. *See Union Pac. R. Co. v. Chi. Transit Authority*, 647 F.3d 675 (7th Cir. 2011) (holding that, even though the railroad property was not currently being used for railroad transportation, the ICCTA applied because a taking would prevent the railroad from using the property in the future for transportation); *Soo Line R. Co. v. City of St. Paul*, 827 F.Supp.2d 1017, 1021–22 (D. Minn. 2010) (finding that a city's proposed condemnation was a form of regulation preempted under the ICCTA because it sought to control a portion of a rail

carrier's property). The STB has rejected this strategy and has cautioned that a contrary "approach to preemption would permit landowners to carve off strips of railroad [property] all over the country for non-rail use, even though the Board has not authorized the [property] to be permanently removed from the nation's rail system under Title 49." *Jie Ao And Xin Zhouf, Petition For Declaratory Order*, FD 35539, 2012 WL 2047726, at *7 (STB June 4, 2012).

Considering "the strong federal policy in favor of retaining rail property in the national rail network, where possible", *id.*, the Court finds that application of adverse possession to this disputed portion of the property would amount to regulation of rail transportation because it would confer exclusive control to Plaintiff over property that is part of the interstate rail network. Accordingly, because an adverse taking of rail property is preempted under the ICCTA, removal to federal court in this case is proper.

## IV. CONCLUSION

For the reasons above, the Court **DENIES** Plaintiff's Motion to Remand. (ECF No. 6.)

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: April 18, 2019

THOMAS E. JOHNSTON, CHIEF JUDGE