# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

TAMMY A. SKIDMORE,

        Plaintiff,

v.   CIVIL ACTION NO. 2:18-cv-01308

NORFOLK SOUTHERN RAILWAY COMPANY,

        Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Tammy Skidmore's ("Plaintiff") motion to reconsider or, alternatively, to designate this Court's April 18, 2019, Memorandum Opinion and Order, denying Plaintiff's motion to remand, as final. (ECF No. 23.) Also pending is Defendant Norfolk Southern Railway Company's ("NSRC") motion for judgment on the pleadings. (ECF No. 25.) For the reasons discussed below, Plaintiff's motion, (ECF No. 23), is **DENIED** insofar as it seeks reconsideration of this Court's decision denying remand. The motion, (ECF No. 23), is **DENIED AS MOOT** with respect to Plaintiff's request for this Court to designate its order as final. NSRC's motion for judgment on the pleadings, (ECF No. 25), is **GRANTED**.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

The complete factual and procedural background of this case is set forth in this Court's prior Memorandum Opinion and Order and need not be repeated at length here. (*See* ECF No. 21 at 1–3.) The Court will outline only those facts pertinent to the present motions.

Plaintiff owns a parcel of real property abutting Loop Creek in Kincaid, West Virginia. (ECF No. 1-1 at 5 ¶ 6 (Am. Compl.).) Plaintiff alleges that a portion of the property has eroded as a result of the installation of a culvert under NSRC's railroad structure located on the opposite side of the creek. (*Id.* at 6 ¶¶ 18–20.) The eroded creek bank at issue is purportedly located on NSRC's right-of-way, which extends from the center of its railroad track onto Plaintiff's property. (*Id.* at 9 ¶ 43.) In her amended complaint, Plaintiff alleges that she acquired this portion of the right-of-way through adverse possession and prescriptive easement and asserts claims to quiet title to the subject portion of the right-of-way. (*Id.* at 9–11 ¶¶ 42–55.) She also asserts state law tort claims, seeking damages for the allegedly eroded creek bank. (*Id.* at 7–9 ¶¶ 24–41, 11–12 ¶¶ 56–59.)

On September 20, 2018, NSRC removed this action to this Court, asserting that the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. 10101, *et seq.*, preempts Plaintiff's claims to quiet title and confers this Court with federal question jurisdiction under 28 U.S.C. § 1331. (ECF No. 1.) Plaintiff subsequently moved to remand her claims to state court, arguing among other things, that the ICCTA does not apply to her claims because the subject portion of the right-of-way does not relate to rail transportation as defined under the statute. (ECF No. 6.)

On April 18, 2019, this Court entered its decision, denying Plaintiff's motion to remand. (ECF No. 21.) The Court held that removal to federal court was appropriate because Plaintiff's claims to quiet title attempt to regulate rail transportation and, thus, are completely preempted by the ICCTA.[1] (*Id.* at 9–15.) On May 9, 2019, Plaintiff filed the present motion for reconsideration.

---

[1] The Court also emphasized that Plaintiff's possession claims trigger a determination regarding abandonment. Whether railroad property has ceased to be used or occupied is a decision that rests exclusively with the Surface Transportation Board ("STB"). *See Chi. & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 319 (1981). Since Plaintiff's claims to quiet title are contingent upon the STB's determination regarding abandonment, the ICCTA preemption provision encompasses all claims advanced by Plaintiff in this action.

(ECF No. 23.)  NSRC later filed the pending motion for judgment on the pleadings on May 17, 2019.  (ECF No. 25.)  Each party timely responded to the respective motions, (ECF Nos. 29, 30), and filed timely replies, (ECF Nos. 31, 32).  As such, the motions are fully briefed and ripe for adjudication.

## II. DISCUSSION

### A. Motion to Reconsider

Plaintiff asks the Court to reconsider its denial of her motion to remand to correct a clear error of law for three reasons.  (ECF No. 24.)  First, she argues there is no federal jurisdiction in this case because the ICCTA does not completely preempt all state laws that have an impact on railroads.  Second, Plaintiff contends that her state law property claims are not expressly preempted by the ICCTA because they do not attempt to economically regulate rail transportation.  Third, Plaintiff argues her claims preclude a finding of implied preemption because they do not unreasonably interfere with rail transportation.  NSRC, however, argues that there is no factual or legal basis for reconsideration because, as this Court recognized in its prior ruling, complete preemption under the ICCTA applies in cases, such as this, where state law directly attempts to manage or govern rail transportation.  (ECF No. 29 at 1.)

Rule 54(b) of the Federal Rules of Civil Procedure governs reconsideration of interlocutory orders and opinions.  *See Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1470 (4th Cir. 1991) (finding that the district court correctly considered a motion for reconsideration "of a prior interlocutory order" under Rule 54(b)).  The Court's April 18, 2019, Memorandum Opinion and Order was an interlocutory order as it did not resolve all claims but simply determined whether the Court has subject matter jurisdiction over this matter.  *See, e.g., Saint Annes Dev. Co. v. Trabich*, 443 F. App'x 829, 832 (4th Cir. 2011) ("[T]he district court's summary judgment order,

which did not resolve all claims against all parties, was interlocutory and thus subject to revision at any time." (citation omitted)).

This Court possesses "broad[] flexibility to revise interlocutory orders before final judgment as the litigation develops and new facts or arguments come to light." *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) (emphasis deleted) (citing *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003); *Cobell v. Jewell*, 802 F.3d 12, 25–26 (D.C. Cir. 2015)). The Court "may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice." *Id.* (alteration and internal quotation marks omitted); *see id.* ("The law-of-the-case doctrine provides that in the interest of finality, 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"). "This standard closely resembles the standard applicable to motions to reconsider final orders pursuant to [Federal Rule of Civil Procedure] 59(e), but it departs from such standard by accounting for potentially different evidence discovered during litigation as opposed to the discovery of new evidence not available at trial." *Id.* (internal quotation marks omitted); *see Mayfield v. NASCAR, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012) ("A Rule 59(e) motion may only be granted in three situations: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." (internal quotation marks omitted)).

In opposing application of preemption under the ICCTA, Plaintiff argued in her motion to remand that there was no railroad equipment or operations on the disputed portion of the right-of-way over which ICCTA jurisdiction could attach. (ECF No. 6 at 10.) This Court considered and

4

rejected Plaintiff's argument that her possessory claims fall outside the purview of the ICCTA because the disputed property is not utilized for rail transportation. Instead, this Court concluded that conferring Plaintiff with exclusive control and ownership over this portion of land would amount to a regulation of rail transportation within the meaning of the ICCTA.

In reaching its decision, this Court relied on Fourth Circuit precedent which establishes that the ICCTA's preemption provision, 49 U.S.C. § 10501, expressly displaces only state laws that attempt to regulate rail transportation. (ECF No. 21 at 5–6 (citing *Norfolk S. Ry Co. v. City of Alexandria*, 608 F.3d 150, 157 (4th Cir. 2010) (citing *PCS Phosphate Co., Inc. v. Norfolk S. Corp.*, 559 F.3d 212, 218 (4th Cir. 2009) (holding that "Congress narrowly tailored the ICCTA preemption provision to displace only regulation, *i.e.*, those state laws that may reasonably be said to have the effect of managing or governing rail transportation, while permitting the continued application of laws having a more remote or incidental effect on rail transportation.")))).) *See, e.g., Elam v. Kan. City S. Ry.*, 635 F.3d 796, 807 (5th Cir. 2011) (holding that the ICCTA "completely preempts state laws (and remedies based on such laws) that directly attempt to manage or govern a railroad's decision in the economic realm."); *Adrian & Blissfield R. Co. v. Village of Blissfield*, 550 F.3d 533, 539 (6th Cir. 2008) (same); *Island Park, LLC v. CSX Transp.*, 559 F.3d 96, 102 (2nd Cir. 2009) (same); *Union Pac. R.R. v. Chi. Transit Auth.*, 647 F.3d 675, 678 (7th Cir. 2011) (same).

This Court further relied on several decisions of federal courts and the Surface Transportation Board ("STB") that have applied complete preemption to this provision in the context of state possessory claims like those asserted by Plaintiff here. *See, e.g., 14500 Ltd. v. CSX Transp., Inc.*, No. 12-cv-1810, 2013 WL 1088409 (N.D. Ohio 2013) (finding plaintiff's adverse possession and prescriptive easement claims were preempted by the ICCTA where the taking would affect the railroad's potential future needs to accommodate increased traffic); *Union*

*Pac. R. Co. v. Chi. Transit Auth.*, 647 F.3d 675 (7th Cir. 2011) (holding that, even though the railroad property was not currently being used for transportation, the ICCTA applied because a taking would prevent the railroad from using the property for future transportation needs); *B & S Holdings LLC v. BNSF Ry. Co.*, No. 12-cv-387, 2012 WL 3966320 (E.D. Wash. Sept. 11, 2012) (where a building and parking area encroached onto railroad property, the court held that the plaintiff's adverse possession claim was completely preempted by ICCTA "because not only would it interfere with railroad operations, but [it] would divest the railroad of the very property with which it conducts its operations."); *Soo Line R. Co. v. City of St. Paul*, 827 F. Supp. 2d 1017, 1021–22 (D. Minn. 2010) (finding that a city's proposed condemnation was a form of regulation preempted under the ICCTA because it sought to control a portion of a rail carrier's property); *Jie Ao and Xin Zhou, Petition for Declaratory Order*, FD 35539, 2012 WL 2047726 (S.T.B. June 6, 2012) (holding that the ICCTA completely preempted a petitioner's adverse possession claim because it "would directly affect the amount and type of maintenance that could be performed on [the railroad's right-of-way], and limit future options for reactivation."). The courts and STB concluded in these cases that "attempts to take railroad property are preempted by the ICCTA" where the taking would affect current or future railroad operations based on "the strong federal policy in favor of retaining rail property in the national rail network, where possible." *14500 Ltd.*, 2013 WL 1088409, at *4 (citing *Jie Ao and Xin Zhou*, 2012 WL 2047726, at *7). Applying this reasoning, the Court concluded here that Plaintiff's ownership claims, the remedies of which directly impact NSRC's installation and design of its culvert and drainage system, are preempted by the ICCTA.

In support of her arguments that the Court committed clear error, Plaintiff directs the Court to the Fourth Circuit's decision in *PCS Phosphate Co.* and the Fifth Circuit's decision in *Franks*

6

*Inv. Co. LLC v. Union Pac. R.R. Co.*, 593 F.3d 404 (5th Cir. 2010). In *PCS Phosphate Co.*, the Fourth Circuit, in reviewing preemption under the ICCTA in the context of breach of contract claims, emphasized that the ICCTA preemption provision is "narrowly tailored . . . to displace only . . . those state laws that may reasonably be said to have the effect of managing or governing rail transportation, while permitting the continued application of laws having a more remote or incidental effect on rail transportation." *See PCS Phosphate Co.*, 559 F.3d at 218 (internal quotation marks and citations omitted). In this regard, the Fourth Circuit concluded that voluntary agreements were not "presumptively regulatory" as required to implicate the ICCTA. *Id.* at 220. Plaintiff's claims here involve state ownership claims, not voluntary agreements. Thus, the Court is not persuaded that the Fourth Circuit's decision in *PCS Phosphate Co.*, which involved unique remedies under a breach of contract claim, must lead this Court to conclude here that Plaintiff's ownership claims do not attempt to regulate NSRC's rail operation.

In *Franks*, the plaintiff alleged that he had a possessory right "similar to an easement" to use a railroad's crossing. 593 F.3d at 411. The Fifth Circuit held that ICCTA preemption did not apply because the state property laws invoked under plaintiff's claims did not "have the effect of managing or governing" rail transportation, but only "incidentally affect[ed]" rail transportation. *Id.* The *Franks* court distinguished the situation before it with *Friberg v. Kansas City S. Ry. Co.*, 267 F.3d 439, 443 (5th Cir. 2001), where a state-based tort suit alleging that a railroad negligently allowed trains to block railroad crossings was preempted by the ICCTA because the suit "reach[ed] into the area of economic regulation of railroads," *id.*, by attempting to dictate the way a railroad uses its tracks and operates its trains. 593 F.3d at 441.

In this case, Plaintiff's claims, seeking to acquire the purportedly eroded portion of the right-of-way, are more akin to *Friberg* than to *Franks*, where the plaintiff simply claimed a right

7

to use the railway crossing. NSRC's track structure and the property at issue here are located in a 100-year floodplain. (ECF No. 1-1 at 6 ¶ 14.) Plaintiff acknowledges that the culvert, which is allegedly diverting water in Loop Creek and causing the right-of-way embankment to erode, was installed underneath NSRC's track structure to drain surface water from its property and operational lines. (*Id.* at 5 ¶ 11, 6 ¶¶ 13, 16–20.) To remedy the alleged damages to the property, Plaintiff seeks to use state possession claims in an attempt to regulate NSRC's use of the property and installation and design of its culvert and drainage system. While not apparent on its face, the possessory relief sought here would divest NSRC of ownership and control over a portion of property adjacent to its tracks and drainage system, which in turn would require NSRC to modify, redesign, reconstruct, or relocate the culvert to prevent surface water from "divert[ing] the natural flow of water in Loop Creek[,]" (*id.* at 6 ¶ 18), and "discharge[ing] abnormally high volumes of surface water against Plaintiff's property[,]" (*id.* ¶ 19). Essentially, it is NSRC's installation, construction, and use of the culvert—which necessarily ensures proper drainage and the unimpeded flow of transportation on its rail tracks—that gives rise to Plaintiff's state possession claims. The remedies provided under these claims are the type that would "have the effect of managing or governing rail transportation" that is expressly preempted by the ICCTA. *Franks*, 593 F.3d at 410.

In sum, Plaintiff's legal arguments in her motion to reconsider are simply an attempt to raise arguments that could have been more fully developed or raised in her motion to remand or to relitigate issues already decided by this Court. *See Pacific Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (stating that "Rule 59(e) motions may not be used . . . to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be

used to argue a case under a novel legal theory that the party had the ability to address in the first instance."). Accordingly, Plaintiff's motion for reconsideration is **DENIED**.

B. *Motion for Judgment on the Pleadings*

On April 18, 2019, this Court entered a decision denying Plaintiff's motion to remand on the basis that Plaintiff's ownership claims were preempted by the ICCTA. (ECF No. 21.) Based upon this Court's ruling, NSRC now moves the Court for judgment on the pleadings as to all counts advanced in the Amended Complaint.

1. Legal Standard

When considering a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the Court applies the same standard as when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014); *Butler v. United States*, 702 F.3d 749, 751–52 (4th Cir. 2012). Under the familiar standard of Rule 12(b)(6), the Court assumes the factual allegations in the pleadings to be true and construes them in the light most favorable to the non-moving party. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994); *see also Edwards v. City of Goldsboro*, 178 F.3d 231, 248 (4th Cir. 1999). "A Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." *Drager*, 741 F.3d at 474. However, the Court is not obliged to accept allegations that "represent unwarranted inferences, unreasonable conclusions, or arguments," or that "contradict matters properly subject to judicial notice or by exhibit." *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006) (internal quotation marks omitted).

A district court may reach the merits of an affirmative defense when ruling on this type of motion "if all facts necessary to the affirmative defense clearly appear on the face of the

complaint." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). Pursuant to Federal Rule of Civil Procedure 10(c), "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Further, if evidence outside the pleadings is tendered to and accepted by the Court, the motion for judgment on the pleadings is converted into a motion for summary judgment under Rule 56. *See A. S. Abell Co. v. Balt. Typographical Union*, 338 F.2d 190, 193 (4th Cir. 1964); Fed. R. Civ. P. 12(d). Ultimately, "[t]he court may grant a motion for judgment on the pleadings and dismiss a plaintiff's claims with prejudice when the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Buie v. BFGoodrich Textile Chems., Inc.*, 60 F. Supp. 2d 522, 522 (W.D. N.C. 1999). The Court will construe the present motion solely as a motion for judgment on the pleadings as the documents to be considered by the Court consist of the Complaint, Amended Answer, Amended Complaint, and the January 10, 2018 Survey by New River Engineering, Inc, which is incorporated by reference in the Amended Answer and integral to an affirmative defense asserted therein. *See Allen v. Coloplast Corp.*, No. 2:13-cv-22383, 2016 WL 6954742 (S.D. W. Va. Nov. 22, 2016) ("when deciding a 12(c) motion, the court may consider the content of the competing pleadings, exhibits thereto, matters incorporated by reference in the pleadings, [and] whatever is central or integral to the claim for relief or defense.") (internal quotation omitted).

    2. <u>Facts Presented in the Pleadings</u>

Plaintiff resides in Kincaid, West Virginia, on a parcel of property that abuts Loop Creek. (ECF No. 1-1 at 4 ¶ 1, 5 ¶¶ 6, 7 (Am. Compl.).) NSRC owns property on the opposite side of the creek where it operates rail lines. (*Id.* ¶ 9.) NSRC installed a "culvert draining surface water from [its] property into Loop Creek a short distance upstream from Plaintiff's residence." (*Id.* at 6 ¶ 13.) Plaintiff filed a complaint alleging that "NSRC installed the culvert in such a manner" that

10

drainage water discharges into Loop Creek and against the creek bank in front of her home. (*Id.* at 6 ¶¶ 17–19.) Plaintiff claims that the culvert has caused the creek bank to erode approximately three to five feet, (*id.* ¶ 20), and is "threatening the foundation of her home," (*id.* at 7 ¶ 21).

The eroded creek bank at issue is purportedly located on NSRC's right-of-way, which extends from the center of its railroad track onto a portion of Plaintiff's property. (*Id.* at 9 ¶ 43; *id.* at 76 (Am. Answer); *id.* at 89 (Property Survey).) In her amended complaint, Plaintiff alleges that she is the owner of this portion of the right-of-way by virtue of adverse possession and prescriptive easement. (*Id.* at 9–11 ¶¶ 42–55.) Her seven-count complaint asserts the following causes of action against NSRC: (1) negligence based on unreasonable use; (2) private nuisance; (3) trespass; (4) adverse possession; (5) prescriptive easement; (6) strict liability; and (7) negligence based on loss of lateral and subjacent support. (*Id.* at 7–12.)

### 3. Property Claims

Counts IV and V of the Amended Complaint are Plaintiff's claims to quiet title through the doctrines of adverse possession and prescriptive easement. This Court has ruled that these claims are completely preempted by the ICCTA and, thus, it lacks subject matter jurisdiction over these claims. *See Norfolk S. Ry. Co. v. Balt. & Annapolis R.R.*, 715 F. App'x 244, 249 (4th Cir. 2017). Accordingly, Counts IV and V are **DISMISSED**.

### 4. Remaining Claims

Plaintiff's remaining claims for negligence based on unreasonable use, private nuisance, trespass, strict liability, and negligence based on loss of lateral and subjacent support seek damages to the eroded creek bank allegedly caused by NSRC's installation of the culvert underneath its track bed. (ECF No. 1-1 at 7–9 ¶¶ 24–41, 11–12 ¶¶ 56–59.) As set forth above, there is no dispute that NSRC holds record title to this portion of property. Further, the Court has deemed Plaintiff's

attempts to claim ownership to the property by virtue of adverse possession and prescriptive easement preempted as a matter of law. Given Plaintiff does not own the property she claims eroded, she lacks standing to pursue these tort claims. *State ex rel. Leung v. Sanders*, 584 S.E.2d 203, 212 (W. Va. 2003) ("One specific aspect of standing is that one generally lacks standing to assert the rights of another."); *W. Va. Div. of Highways v. Mason*, No. 17–0430, 2018 WL 2192987, at *3 (W. Va. May 14, 2018) (memorandum decision) (holding respondent lacked standing to enjoin petitioner from removing hedges and trees from property to which she had no ownership interest).

Plaintiff argues that, even if NSRC owns the eroded creek bank, she still has a right to lateral support for the remaining portion of the property she owns. (ECF No. 30.) Under West Virginia law, "[a]n adjacent landowner is strictly liable for acts of commission and omission on his part that result in the withdrawal of lateral support to his neighbor's property." *Noone v. Price*, 298 S.E.2d 218, 221 (W. Va. 1982) (holding that this obligation is "limited to land in its natural state"). However, Plaintiff's Amended Complaint does not allege that the culvert has damaged any portion of the property beyond the eroded creek bank within NSRC's right-of-way. Though she claims that the soil erosion is "threatening the foundation of her home[,]" (ECF No. 1-1 at 7 ¶ 21), Plaintiff alleges no facts for the Court to infer that there is existing damage to her home or property as a result of the culvert. Accordingly, these claims cannot withstand the Rule 12(b) standard. Counts I, II, III, VI, and VII are **DISMISSED**.

C. *Motion to Designate Order as Final*

Finally, Plaintiff requests the Court to designate its April 18, 2019, Memorandum Opinion and Order denying remand as final to permit an appeal to the Fourth Circuit. The Court's instant ruling, granting NSRC judgment on the pleadings, dismisses all of Plaintiff's claims against NSRC

and makes this matter fully ripe for appeal.  Accordingly, this motion is **DENIED AS MOOT**.

### III.  CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's motion, (ECF No. 23), insofar as it seeks reconsideration of this Court's decision denying remand.  The Court **DENIES AS MOOT** the motion, (ECF No. 23), with respect to Plaintiff's request for this Court to designate its Memorandum Opinion and Order as final.  The Court further **GRANTS** NSRC's motion for judgment on the pleadings.  (ECF No. 25.)  Accordingly, as no claims remain in this case, the Court **DISMISSES** this action and **DIRECTS** the Clerk to remove this matter from the Court's docket.  As such, the status conference scheduled for December 16, 2019, is hereby **CANCELED**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:       December 12, 2019

_____
THOMAS E. JOHNSTON, CHIEF JUDGE